UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **ERIK AHLGREN**, as Trustee in Bankruptcy for the Estate of Roger Elwell,<br><br>                Plaintiff,<br><br>v.<br><br>**BLAZEK CONTRACTING CORP.**<br><br>                Defendant. | Civ. Case. No.: 17-cv-05020 (JNE/LIB)<br><br>**MEMORANDUM OF LAW SUPPORTING JOINT MOTION FOR COURT APPROVAL OF FLSA SETTLEMENT** |

I, **MOLLY E. NEPHEW**, do hereby swear, affirm, and attest as follows:

1. I am over 18 years of age and am an attorney at law duly admitted as Attorney of Record in this case. I am an Associate Attorney at the law firm of Johnson Becker, PLLC, and represent the Plaintiff, Erik Ahlgren, as Trustee in Bankruptcy for the Estate of Roger Elwell, and Payee and original Plaintiff, Roger Elwell, in the above captioned matter. Based on my personal knowledge and my review of the relevant records and documents in this matter, maintained and received in the course of my law firm's regular business practices, I could and would testify to the facts set forth in this declaration if called upon to do so in any court of law. I submit this declaration in support of the Joint Motion for Court Approval of FLSA Settlement.

2. On April 23, 2018, following the pretrial conference, Defense Counsel made me aware that Defendant had documents relevant to the ultimate issue of stage two FLSA decertification, liability, and potential damages. The Parties decided to exchange these documents and engaged in settlement negotiations to see if a settlement could be reached in this Action.

3. Following the exchange of the relevant documents, Defense Counsel's analysis, evaluation, and calculation of the potential damages in the Action, I conducted an independent review of all information and conduct damages calculations as well.

4. The settlement negotiated to settle this Action compensates Roger Elwell for all of his alleged unpaid overtime during the two-year FLSA statutes of limitations period, and also includes liquidated damages in the full amount afforded under the FLSA.

1

5. Based on my knowledge of this case and the applicable law, along with my experience litigating these types of cases in similar wage and hour actions, I believe the settlement amount is both fair and reasonable. This amount was reached through arm's length negotiations after the thorough review of the relevant documents and legal authority impacting the claims in this Action, including, but not limited to stage one conditional certification, stage two decertification, FLSA liability, FLSA willfulness, the Motor Carrier Act exemption, the Motor Carrier Act's exceptions to the exemption, and Roger Elwell's bankruptcy.

6. Johnson Becker is a national plaintiffs' law firm that represents individuals in complex litigation. The lawyers at Johnson Becker have over 100 years of combined litigation and trial experience and have served in numerous leadership committees in some of the largest products liability and class cases in the country, including multiple Multi-District Litigation and state court consolidation court appointments. This firm regularly counsels FLSA collective actions as well.

7. I graduated from Hamline University of Law in May 2015 and have been a licensed attorney since October 2015. I have regularly practiced in the Federal District Courts throughout the United States, concentrating my practice on employment litigation, specifically, federal FLSA matters. I am a member of good standing of the bar of the State of Minnesota, the United States District Court for the District of Minnesota, the United States District Court for the District of Colorado, and the United States District Court for the Central District of Illinois.

8. My colleague and Attorney of Record on this case, Jacob R. Rusch ("Rusch") is Associate Attorney at Johnson Becker, PLLC. Rusch graduated from William Mitchell College of Law in 2011 and has regularly practiced in the Federal District and Circuit Courts throughout the United States since that time, concentrating his practice on employment litigation, specifically, federal FLSA matters. Rusch is a member in good standing of the bar of the State of Minnesota, United States District Court for the District of Minnesota, the United States District Court for the District of Colorado, the United States District Court for the Central District of Illinois, and the United States Court of Appeals Fifth Circuit.

9. In connection with its work in complex litigation—like this—the Firm typically charges from $250 per hour for young associates to $700 per hour for senior partners.

10. My hourly rate is $300.00 per hour.

11. Rusch's hourly rate is $425.00 per hour.

12. I am familiar with the rates customarily charged in Minnesota, Minneapolis/St. Paul and the national legal market for complex class litigation for partners, associates and legal assistants. It is my understanding that the rates charged by the Firm as listed above are, on the whole, within the range normally charged for such matters by attorneys with comparable skill, experience and reputation litigation similar cases.

13. Lawyers at Johnson Becker, such as Mr. Rusch and myself are required to record time contemporaneously as it is completed. The Firm uses a case management system called Needles. Needles is an off-the-shelf case management platform that includes a time management system. When completing time entries, lawyers and staff are directed to provide detailed explanation of their work sufficient to identify completed tasks. These instructions require that the task is billed in "0.1" hour increments. All time is stored on the Needles platform that includes the person who performed the task, a description of the task, how much total time the task took, and the individuals hourly bill rate.

14. Using the Needles platform to review the above-entitled case and the lodestar method to calculate our attorneys' fees, our Firm has incurred over $19,000.00 in attorneys' fees litigating this case. These fees occurred through 1) the investigation, working up and drafting of the collective and class action complaint; 2) the client interviews, legal research, working up and drafting of the motion for conditional certification; 3) the conferences with Defense Counsel, working up, and drafting the proposed pretrial schedule and the subsequent scheduling disputes; 4) the pretrial conference; 5) the factual and legal research into Mr. Elwell's bankruptcy, how it potentially impacted his claim, and the drafting of the reply in support conditional certification; 6) reopening Mr. Elwell's bankruptcy and working with Mr. Ahlgren to retain us as counsel and substitute him as the Named Plaintiff, 7) reviewing Defendant's documents produced; and 8) damage calculations and settlement negotiations.

15. Costs, litigation related expenses, which include a variety of different topics, are recorded in the Firm's billing system QuickBooks®. Specifically, as the Firm receives invoices from various vendors, the Firm's Comptroller—Paula Verhunce—records the cost in QuickBooks®. The costs, be it postage, court reporter services, expert fees, court fees etc . . . are assigned an "Invoice Reference Number" within a master file number in the Firm's computer software system (Needles). In other words, a given invoice is directly linked to the actual file and stored in QuickBooks®. Once the cost is recorded in QuickBooks®, the

Comptroller cuts a check, which is then reviewed by a Partner in the Firm with check-signing privileges. Case costs that are not linked to a specific case are flagged for further review. Upon approval of a given cost, the check is returned to the Firm's Comptroller who confirms the check is assigned to the appropriate file and, ultimately, reconciled on the Firm's Balance Sheet.

16. In connection with preparing this Declaration, I directed the Comptroller to supply me with an electronic itemized report of all expenses. I personally reviewed the expenses associated with the litigation. The costs incurred in litigating this case totaled $566.37 and included costs of filing the action, process server costs, legal research costs, and postage costs.

17. All costs incurred were reasonable and necessary to prosecute this case.

18. Attached hereto as Exhibit 1 is a true and correct copy of the Parties' proposed Settlement Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: July 10, 2018        s/ Molly E. Nephew
                                  Molly E. Nephew